IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES LEE DORSEY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 20-cv-00088 ) ) Judge Andrea R. Wood |
| PARTHASARATHI GHOSH, et al., | ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff James Lee Dorsey has brought this suit under 42 U.S.C. § 1983 against Dr. Parthasarathi Ghosh, Dr. Imhotep Carter, and Dr. Christian Okezie (collectively, "Defendants"), alleging that they were deliberately indifferent to his serious medical condition in the form of persistent knee pain. Defendants have filed a motion for summary judgment based on the statute of limitations and Dorsey's purported failure to exhaust his administrative remedies before filing suit. (Dkt. No. 89.)[1] Dorsey does not dispute that his claims against Dr. Ghosh and Dr. Carter are time-barred, so summary judgment is granted in their favor. But he does contest whether he failed to exhaust his administrative remedies with respect to Dr. Okezie. Nonetheless, for the reasons stated below, there is no question of fact that Dorsey failed to exhaust his available administrative remedies before suing Dr. Okezie. Thus, Dr. Okezie is entitled to summary judgment in his favor as well.

---

[1] Dorsey has also sued Ghaliah Obaisi, in her capacity as the independent administrator of the estate of Dr. Saleh Obaisi. Dorsey's claims based on Dr. Obaisi's conduct are not the subject of this motion. (*See* Defs. Mem. at 2 n.1, Dkt. No. 90 ("Defendants have reviewed [Dorsey's] Grievance File and are not pursuing a grievance or statute of limitations challenge on [behalf of] Dr. Obaisi").)

## BACKGROUND

The following summary of the material facts is taken from the parties' submissions pursuant to Northern District of Illinois Local Rule 56.1. (Pl.'s Resp. to Defs.' Statement of Material Facts ("PRDSF"), Dkt. No. 94; Defs.' Resp. to Pl.'s Statement of Additional Material Facts ("DRPSAF"), Dkt. No. 98.) For purposes of the present summary judgment motion, this Court will view the evidence in the light most favorable to Dorsey as the non-moving party and draw all reasonable inferences in his favor. *Leibas v. Dart*, 108 F.4th 1021, 1024 (7th Cir. 2024).

The events underlying this lawsuit largely occurred while Dorsey was an inmate at Stateville Correctional Center ("Stateville"). (PRDSF ¶ 3.) Between 2010 and 2021, Dorsey submitted numerous complaints through Stateville's grievance process. (DRPSAF ¶¶ 1, 29.) These grievances mostly concerned his claimed medical ailments, especially with respect to pain in his right knee. (*E.g.*, *id.* ¶¶ 1–12; *see also* PRDSF ¶ 8.)

Of particular significance for present purposes is a grievance dated November 3, 2018 ("November 3, 2018 Grievance"). (PRDSF ¶ 44; DRPSAF ¶ 17; *see also* Pl.'s Statement of Additional Material Facts, Ex. 17, Nov. 3, 2018 Grievance, Dkt. No. 96-17.) Where the grievance form called for "a description of what happened, when and where it happened, and the name or identifying information for each person involved," Dorsey responded as follows:

> This Grievance concerns non-treatment of my right knee. For some years, I've been having pain, swelling, locking, weakness and the feeling of bone on bone pain. I need an M.R.I. This issue has gone untreated for years.

(Nov. 3, 2018 Grievance at 3.) In terms of relief, Dorsey requests "an M.R.I. to see the extent of damage." (*Id.*) The Grievance Counselor forwarded the November 3, 2018 Grievance for review on November 28, 2018. (*Id.*) The Chief Administrative Officer concurred with the Grievance Officer's recommendation to deny the grievance on April 19, 2019. (*Id.* at 2.) Dorsey promptly appealed (*id.*), but on May 20, 2019, the Administrative Review Board ("ARB") returned the

grievance, stating, "Offender does not provide dates he requested treatment and was denied therefore unable to address" (*id.* at 1).

Dorsey subsequently filed this lawsuit under § 1983 on January 3, 2020. (Compl., Dkt. No. 1.) In the First Amended Complaint ("FAC"), he asserts claims based on constitutionally deficient medical care against Dr. Ghosh, Dr. Carter, and Dr. Okezie; each of whom had served as a Medical Director at Stateville. (FAC ¶¶ 5–9, Dkt. No. 30.) Dr. Okezie, for his part, served as the Interim Medical Director from March 21, 2018, until October 10, 2018 (PRDSF ¶ 7); he left the prison afterwards (Defs.' Statement of Material Facts, Ex. 45, Ebbitt Decl. ¶ 7, Dkt. No. 91-2). In the FAC, Dorsey alleges that he had two appointments with Dr. Okezie: one on April 9, 2018, and the other on July 20, 2018. (FAC ¶¶ 38–39.) Dorsey accuses Dr. Okezie, along with the other Defendants, of deliberate indifference, seeking damages and injunctive relief. (*Id.* at 13–14.) Upon review of his *pro se* complaint pursuant to 28 U.S.C. § 1915A, the Court allowed Dorsey's claims to proceed against these Defendants so far as they concern Dorsey's medical complaints regarding his right knee. (June 25, 2021 Order-Statement at 3, Dkt. No. 27.)

Dorsey's current counsel was recruited through the Northern District of Illinois's pro bono program on August 26, 2022. (Dkt. No. 82.) After a period of limited discovery, chiefly involving Dorsey's grievance file, Dr. Ghosh, Dr. Carter, and Dr. Okezie now seek summary judgment in their favor. With respect to Dr. Ghosh and Dr. Carter, Defendants argue that Dorsey's claims are barred by the statute of limitations. With respect to Dr. Okezie, they argue that Dorsey failed to exhaust his grievances before filing suit. Dorsey does not contest the motion as to Dr. Ghosh and Dr. Carter, so summary judgment will be entered in their favor. But as to Dr. Okezie, Dorsey argues that he did exhaust his claim or, alternatively, that he is excused from the exhaustion requirement due to the unavailability of the grievance process.

**DISCUSSION**

When considering a summary judgment motion, courts must view the evidence in the light most favorable to the non-moving parties and draw all reasonable inferences in their favor. *Leibas v. Dart*, 108 F.4th 1021, 1024 (7th Cir. 2024). "Summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." *Clacks v. Kwik Trip, Inc.*, 108 F.4th 950, 957 (7th Cir. 2024).

The Prison Litigation Reform Act ("PLRA") prohibits prisoner plaintiffs, like Dorsey, from bringing a lawsuit before they have exhausted their available administrative remedies. 42 U.S.C. § 1997e(a). "The PLRA exhaustion requirement ensures that a prison has received notice of, and an opportunity to correct, a problem before being drawn into litigation." *Jackson v. Esser*, 105 F.4th 948, 958–59 (7th Cir. 2024) (internal quotation marks omitted). The requirement is "strict but not absolute." *King v. Dart*, 63 F.4th 602, 606 (7th Cir. 2023). Because failure-to-exhaust is an affirmative defense, the defendants have the burden of proof. *Hernandez v. Dart*, 814 F.3d 836, 840 (7th Cir. 2016). "[D]isputed factual questions that bear on exhaustion can be resolved by a district court judge (rather than a jury) as a preliminary matter, in what is known as a '*Pavey* hearing.'" *Smallwood v. Williams*, 59 F.4th 306, 315 (7th Cir. 2023) (citing *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008), *as amended on denial of reh'g* (Sept. 12, 2008)).

I. **Whether Dorsey Exhausted His Administrative Remedies**

Exhaustion under the PLRA requires a plaintiff to comply with "the specific procedures and deadlines established by the prison's policy," *Hernandez*, 814 F.3d at 842 (internal quotation marks omitted)—in this case, the policy of the Illinois Department of Corrections ("IDOC"), 20 Ill. Admin. Code § 504.800 *et seq*. IDOC regulations require plaintiffs to exhaust their claims via a grievance procedure. 20 Ill. Admin. Code § 504.810. In their opening brief, Defendants

contend that Dorsey's grievance file contains no grievances against Dr. Okezie. In his response brief, however, Dorsey points to the November 3, 2018 Grievance as having exhausted his claim against Dr. Okezie. This grievance was filed roughly one month after Dr. Okezie had stopped serving as the Interim Medical Director. (PRDSF ¶ 7.) Defendants argue that the November 3, 2018 Grievance does not contain sufficient detail identifying Dr. Okezie, meaning it does not exhaust Dorsey's claim against him.

IDOC regulations require a grievance to "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 Ill. Admin. Code § 504.810(c). If the plaintiff does not know the name of someone involved in the incident, he "must include as much descriptive information about the individual as possible." *Id.* The 2018 version of this regulation, controlling at the time, imposes the same requirements. 20 Ill. Admin. Code § 504.810(c) (2018). Simply put, in accordance with IDOC regulations, "[t]he absence of any information indicating who is the target of a grievance constitutes a fatal defect." *Venson v. Russell*, No. 18-CV-07055, 2022 WL 9462232, at *4 (N.D. Ill. Oct. 14, 2022).

There is doubt that the November 3, 2018 Grievance contains insufficient detail to identify Dr. Okezie. Dorsey states only that the treatment of his knee has been inadequate, that for years he has been experiencing symptoms, that he needs an MRI, and then again that the issue has been "untreated for some years." (Nov. 3, 2018 Grievance at 3.) He does not provide names or dates. He does not even describe a particular incident—instead, referring vaguely to years of allegedly inadequate care. As a result, it is far from clear that the grievance concerns medical treatment during the seven months Dr. Okezie served as Interim Medical Director— much less what role Dr. Okezie, or anyone else, played in the allegedly inadequate treatment. *Cf.*

5

*Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) (deeming a grievance that did not name the defendant sufficient when it involved a specific "administrative decision" and "prison administrators" knew "who was responsible for that decision").

If Dorsey was not able to name Dr. Okezie, IDOC regulations required him at least to provide "descriptive information" about Dr. Okezie. 20 Ill. Admin. Code § 504.810(c). The November 3, 2018 Grievance does not do so. In fact, the grievance would fail to put the prison on notice of Dorsey's claims regardless of the particular requirements imposed by the IDOC regulations. *See Schillinger v. Kiley*, 954 F.3d 990, 995 (7th Cir. 2020) (explaining that, "[w]hen the applicable regulations provide little guidance regarding the required contents of a prison administrative complaint," a grievance must "provide[] notice to the prison of the nature of the wrong for which redress is sought" (internal quotation marks omitted)). Because "the purpose of the PLRA" is "to give a prison an opportunity to correct a problem before litigation," a grievance must at minimum "contain enough information about who caused the grieved of problem so that a prison can properly investigate and resolve grievances." *Jackson*, 105 F.4th at 960. The vague, generic nature of the November 3, 2018 Grievance would facilitate no such investigation. *See, e.g.*, *Jackson v. Ahmed*, No. 3:19-CV-00975-GCS, 2021 WL 2660067, at *5 (S.D. Ill. May 21, 2021) ("[T]his grievance is vague and it does not name, describe, or complain about the specific conduct attributable to Defendants in this case.").

As such, the November 3, 2018 Grievance does not contain enough detail to exhaust Dorsey's claims against Dr. Okezie. And no other grievances in the record fill the void. That Dorsey has a long grievance history does not mean he must have exhausted his claims as to Dr. Okezie at some point. *See Hernandez*, 814 F.3d at 842 (explaining that "[f]ederal courts strictly

6

enforce [the exhaustion] requirement"). In sum, Dorsey did not exhaust his claim before bringing suit, as the PLRA requires when the administrative process is available.

## II. Whether Administrative Process Was Available

In the alternative, Dorsey contends that the grievance process was not "available" to him, meaning he had no exhaustion obligation. Under the PLRA, "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross v. Blake*, 578 U.S. 632, 642 (2016) (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). *Ross* describes three scenarios in which the administrative process is "unavailable": first, when the process "operates as a simple dead end," such that "officers [are] unable or consistently unwilling to provide any relief to aggrieved inmates"; second, when the process is "so opaque that it becomes, practically speaking, incapable of use"; and third, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643–44; *see also Ramirez v. Young*, 906 F.3d 530, 538 (7th Cir. 2018) (explaining that these scenarios are "not a closed list").

Here, Defendants contend that the grievance process was clearly available to Dorsey, as evidenced by the fact he successfully exhausted his administrative remedies as to Dr. Obaisi in this case. *See, e.g.*, *Lewis v. Sims*, No. 219CV00100JRSDLP, 2020 WL 1865801, at *4 (S.D. Ind. Apr. 14, 2020) (concluding that an "administrative remedy process was available" to the plaintiff in part because "he had successfully used the administrative remedy procedure in the past"); *see also Dorsey v. Williams*, No. 21-1858, 2022 WL 337192, at *1 (7th Cir. Feb. 4, 2022) (noting Dorsey's lengthy history of grievances and lawsuits). Dorsey, however, argues that the many grievances he has pursued have been largely fruitless, thus belying the availability of the process.

7

Although Dorsey does not fully develop this point, his argument invokes the "dead end" exception described in *Ross*. "Showing a remedy to be a 'dead end' is a tall task," *Wallace v. Baldwin*, 55 F.4th 535, 543 (7th Cir. 2022); "[t]o constitute an 'available' remedy, a process requires only 'the ***possibility*** of some relief,'" *Green Haven Prison Preparative Meeting of Religious Soc'y of Friends v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 16 F.4th 67, 82 (2d Cir. 2021) (quoting *Ross*, 578 U.S. at 643). For example, in *Ross*, the Supreme Court noted that if "a prison handbook directs inmates to submit their grievances to a particular administrative office—but in practice that office disclaims the capacity to consider those petitions"—that procedure is in effect unavailable. 578 U.S. at 643. The same is true "if administrative officials have apparent authority" to resolve the grievance "but decline ever to exercise it." *Id.*

In arguing for unavailability here, Dorsey primarily focuses on his grievances that he claims did not receive timely resolutions. The PLRA does not "permit prison officials to exploit the exhaustion requirement through indefinite delay in responding to grievances." *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (internal quotation marks omitted). To that end, IDOC regulations provide that "[t]he Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the written grievance, when reasonably feasible under the circumstances." 20 Ill. Admin. Code § 504.830(e). Furthermore, "[t]he Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances." *Id.* § 504.850(e). That said, "a grievance process with a[n] . . . aspirational timeline . . . does not necessarily trigger an inmate's right to sue once that period had passed."

8

*Reid v. Balota*, 962 F.3d 325, 331 (7th Cir. 2020) (citing *Ford v. Johnson*, 362 F.3d 395, 400 (7th Cir. 2004)).

Disputes regarding untimely grievance responses typically arise when the plaintiff filed an on-point grievance and was still waiting for a response at the time he filed the lawsuit. *E.g.*, *Massey v. Hardy*, No. 1:21-CV-00560, 2023 WL 2814768, at *4 (N.D. Ill. Apr. 6, 2023). But as discussed above, Dorsey has not filed a grievance with respect to Dr. Okezie. Nor has he cited any caselaw for the proposition that a pattern of failing to timely respond to grievances regarding matters outside the scope of the claims in a lawsuit can excuse an inmate from attempting to file a grievance regarding those claims in the first place. *Cf. Lewis*, 300 F.3d at 833 (reasoning that, even though officials had failed "to respond to [the plaintiff's] other grievances and requests," the plaintiff still needed to follow procedure for the one grievance for which he did receive a response); *Reid*, 962 F.3d at 330 (noting that the plaintiff had properly "erred on the side of exhaustion" after receiving "an ambiguous response to his grievance" (quoting *Ross*, 578 U.S. at 644)). Nonetheless, the Court does not reject out of hand the possibility that a significant history of extraordinary delays could, in theory, cause a grievance process to be deemed an unavailable dead end. *See Wallace*, 55 F.4th at 543 (suggesting that discovery as to whether "the inmate himself had previously filed grievances on this exact issue with no response" or whether "other inmates had previously filed grievances on this exact issue with no response" may help determine whether the process is a dead end).

Even assuming a plaintiff could make this argument, Dorsey has not shown that delays in responding to his grievances rendered the process unavailable to him here. His Statement of Additional Material Facts describes thirty-five grievances, spanning March 7, 2010, through February 11, 2021. (DRPSAF ¶¶ 1–29.) Defendants describe an even larger set of grievances

9

(fifty-one in total) in their Statement of Material Facts. (PRDSF ¶¶ 9–52.) Dorsey cites certain of these grievances as emblematic of the delays purportedly inherent in the system. To be sure, the Court agrees that some grievances appear to have entailed unreasonable delays. (*E.g.*, DRPSAF ¶ 4 (describing grievances for which roughly eighteen months lapsed between filing and resolution).) If Dorsey had brought a lawsuit based on one of those grievances before he received the final disposition, the Court may well have deemed the process unavailable—with respect to that individual grievance.

Yet the evidence does not support the proposition that the delays were so significant and commonplace that the entire grievance process was effectively a dead end. For one thing, many of the grievances in the record were not filed until long after Dr. Okezie had served as Interim Medical Director. But the question is whether "administrative remedies were 'unavailable' ***at the time*** of [Dorsey's] injury" allegedly caused by Dr. Okezie, which calls for consideration of "***previously filed*** grievances." *Wallace*, 55 F.4th at 543 (emphasis added). IDOC regulations provide that, absent good cause or allegations of sexual abuse, grievances must be filed "within 60 days after the discovery of the incident, occurrence or problem that gives rise to the grievance." 20 Ill. Admin. Code § 504.810(a). Because Dr. Okezie stopped serving as Interim Medical Director on October 10, 2018 (PRDSF ¶ 7), the latest Dorsey would have been able to file a typical grievance against him was December 9, 2018. The grievances filed after that date thus carry less evidentiary weight with respect to the availability of the administrative process.

Further, the grievances from the relevant period did not, in fact, involve routine, lengthy response times. It appears that most of the grievances with potentially troubling delays were filed in the early 2010s. (*E.g.*, DRPSAF ¶¶ 2–4, 6.) But Dorsey continued filing grievances over the coming years, and many of those were resolved relatively quickly. (*E.g.*, *id.* ¶¶ 11–12, 14–16.)

10

Among this latter set of grievances is the November 3, 2018 Grievance, discussed above. The Chief Administrative Officer concurred in the Grievance Officer's recommendation to deny the grievance on April 19, 2019, and the ARB returned the grievance for failure to include sufficient details on May 20, 2019. (Nov. 3, 2018 Grievance at 2–3.) Even one of the grievances Dorsey cites as exemplifying systemic untimeliness received a response from the Chief Administrative Officer within two months and a final disposition roughly seven months later. (Pl.'s Statement of Additional Material Facts, Ex. 14, May 4, 2016 Grievance, Dkt. No. 96-14.)

Granted, resolution of these and other grievances did not always comply exactly with the aspirational deadlines from the regulations. 20 Ill. Admin. Code §§ 504.830(e), 504.850(e). Yet such minor delays would not have necessarily warranted deeming the process unavailable as to the individual grievances—much less excusing Dorsey from even attempting to file a grievance as to Dr. Okezie due to systemic untimeliness. *See, e.g.*, *Mlaska v. Shah*, 428 F. App'x 642, 645 (7th Cir. 2011) ("Even though the warden was required to respond within two months, a prisoner litigant cannot make a beeline for court the moment this deadline passes." (internal quotation marks omitted)). Thus, the record indicates that, at the time Dr. Okezie allegedly injured Dorsey, delays in resolving some of Dorsey's many grievances were not sufficiently egregious to render the entire grievance process a dead end.[2]

Further, the other administrative hurdles Dorsey cites do not reveal the unavailability of the grievance process either. Dorsey cursorily references two grievances on this front. In one, he

---

[2] This conclusion is not changed by the fact that Dorsey filed grievances in which he complained he was owed responses to some of his previously filed grievances. Some of the grievances complaining about a lack of answers were filed long after the time of injury. And the unanswered grievances do not all concern the "exact issue" relevant in this case: Dorsey's complaints about his right knee. *Wallace*, 55 F.4th at 543. Also, many of the unanswered grievances had not been outstanding for long when Dorsey demanded a response. (*E.g.*, Pl.'s Statement of Additional Material Facts, Ex. 13, Jan. 8, 2016 Grievance at 3–4, Dkt. No. 96-13 (describing unanswered grievances that had been filed in late 2015).)

claims he had been falsely accused of refusing medical treatment (Pl.'s Statement of Additional Material Facts, Ex. 24, Dec. 26, 2019 Grievance, Dkt. No. 96-24), which he suggests resulted in the improper denials of other grievances. In the other, he claims staff members had refused to answer and had destroyed his prior grievances. (Pl.'s Statement of Additional Material Facts, Ex. 29, Feb. 11, 2021 Grievance, Dkt. No. 96-29.) Such complaints resemble another category of unavailability discussed in *Ross*, concerning scenarios where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." 578 U.S. at 644. As before, had Dorsey brought a claim in connection with one of the allegedly thwarted grievances, there may have been an argument to be made that the process was unavailable as to that specific grievance.

Yet the record evidence does not support applying that exception to excuse Dorsey's failure to file a grievance against Dr. Okezie. Dorsey points to just the grievances themselves as indicative of unavailability; there is, for example, no testimony that he did not file a grievance against Dr. Okezie because he thought it would be thwarted. *Cf. Gooch v. Young*, 24 F.4th 624, 627–28 (7th Cir. 2022) (citing the plaintiff's attestation "that the correctional counselor refused to give him the necessary form" and "that prison officials threatened and intimidated him" as evidence of unavailability). To the contrary, the only grievance Dorsey claims that he filed against Dr. Okezie is the November 3, 2018 Grievance.

In addition, the two grievances at issue explicitly refer to thwarting practices that took place in the years following 2018—after Dr. Okezie allegedly injured Dorsey. (*See* Dec. 26, 2019 Grievance at 3 (referring to "any medical refusals within the past year"); Feb. 11, 2021 Grievance (referring to grievances "dating back to (2019) to present" and a grievance that was allegedly destroyed in late 2020).) They do not allege that efforts to thwart Dorsey's grievances

12

were at play in 2018, which is when Dorsey would have filed a grievance against Dr. Okezie. 20 Ill. Admin. Code § 504.810(a). So, to the extent Dorsey contends that consistent thwarting of grievances created an administrative dead end, akin to his timeliness argument, the temporal mismatch makes these two grievances inapt. *See Wallace*, 55 F.4th at 543 (focusing the inquiry on "previously filed grievances"). On a more fundamental level, the incidents vaguely described in the grievances fall far short of undermining the grievance process as a whole, even when viewed in the light most favorable to Dorsey.

      In short, the grievance process was available to Dorsey at the time of the injury allegedly caused by Dr. Okezie. Dorsey has filed many, many grievances over the years, and there is no evidence that administrative hurdles—like delayed responses—permeated the process to the point that he did not even need to try to file a grievance against Dr. Okezie. In other words, Defendants have "establish[ed] affirmatively that the evidence is so one-sided that no reasonable factfinder could find that [Dorsey] was prevented from exhausting his administrative remedies." *Jackson*, 105 F.4th at 958 (internal quotation marks omitted).

## CONCLUSION

For the reasons discussed above, Defendants' motion for summary judgment (Dkt. No. 89) is granted. Dorsey does not contest that his claims against Dr. Ghosh and Dr. Carter are time-barred; summary judgment is thus entered in their favor. And there is no question of fact that Dorsey did not properly exhaust his administrative remedies as to Dr. Okezie. "When a plaintiff fails to exhaust administrative remedies, [the] complaint must be dismissed without prejudice." *McHale v. McDonough*, 41 F.4th 866, 872 (7th Cir. 2022). So, the claims against Dr. Okezie are dismissed without prejudice. Only the claims against Dr. Obaisi remain at issue in this lawsuit.

ENTERED:

Dated: September 29, 2024

_____
Andrea R. Wood
United States District Judge